# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JASON R. C. WHIBBEY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CIV-12-211-D |
| CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,[1] | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Therefore, pursuant to Rule 25(d) (1) of the Federal Rules of Civil Procedure, Acting Commissioner Colvin is hereby substituted for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

Plaintiff's applications for DIB and SSI, alleging a disability beginning on November 5, 2008, were denied on initial consideration and on reconsideration at the administrative level (TR. 14). An ALJ held a *de novo* hearing on April 7, 2010 (TR. 14; 28-57). The ALJ issued an unfavorable decision on September 24, 2010, finding that Plaintiff was not disabled (TR. 14-23). The Appeals Council denied Plaintiff's request for review, (TR. 1-5), making the decision of the ALJ the final decision of the Commissioner.

**STANDARD OF REVIEW**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment

for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## THE ADMINISTRATIVE DECISION

In addressing Plaintiff's disability applications, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012 (TR. 16). The ALJ then followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§404.1520; 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his alleged onset date (TR. 16).

At step two, the ALJ determined that Plaintiff has severe impairments consisting of diabetes mellitus; foot ulcers; hypertension; status post amputation of left great toe; sinusitis; status post septoplasty; and obesity (TR. 16). The ALJ concluded that Plaintiff's depression is "a non-severe impairment," (TR. 17), a finding not challenged by the Plaintiff. At step three, the ALJ found that none of Plaintiff's impairments singly, or in combination, meets or equals any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

The ALJ next considered Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) subject to the following additional limitations: occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; can sit for about thirty (30) minutes at any one time before having to stand at the workstation for five (5) minutes or less; stand and/or walk for no more than ten

(10) minutes at any one time; and will require a one-handed assistive device to ambulate

(TR. 18).

At step four of the sequential evaluation, the ALJ found that Plaintiff was unable to perform any of his past relevant work as night stocker, security guard, bartender's helper, floor walker, warehouse worker or car wash attendant (TR. 21).

At step five, the ALJ relied on the testimony of a vocational expert (VE) in determining that Plaintiff can perform other jobs existing in significant numbers in the local and national economies including food and beverage order clerk; information clerk; or addressing clerk/mail sorter (TR. 22-23). Thus, at step five of the sequential evaluation process, the ALJ determined that Plaintiff is not disabled and therefore is not entitled to DIB or SSI.

## ISSUES PRESENTED

Plaintiff contends that the ALJ erred in analyzing Plaintiff's impairments at step three of the sequential evaluation process; in failing to properly evaluate his obesity; and in failing to properly evaluate his credibility.

## DISCUSSION

### I. Step Three Analysis

At the third step of the sequential evaluation, the ALJ must consider whether a claimant's impairments or combination of impairments meets the criteria of any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant is presumptively disabled if his severe impairment meets or medically equals the characteristics of any of the listed impairments. Although Plaintiff bears the burden of

4

proof at step three, the ALJ must explain why a claimant does not meet a listing. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (under 42 U.S.C. 405(b)(1) an ALJ is required to discuss the evidence and explain why a claimant is not disabled at step three).

Plaintiff contends that his foot ulcers, resulting from uncontrolled diabetes, meet or medically equal the criteria of Listing 8.04 and that therefore, the ALJ should have found him to be disabled at the third step of the sequential evaluation (See Plaintiff's Brief at pages 4-7). Plaintiff further contends that none of the ALJ's other findings at steps four or five "conclusively negate the possibility" that his impairments meet the criteria for Listing 8.04 and that therefore, this case should be remanded for further review. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (step three error requires remand unless specific findings at steps four and five of the sequential process preclude any favorable ruling for the claimant at step three).

The ALJ's step three analysis was cursory:

> The undersigned has considered listings 1.05; 1.08; 3.00, *et seq.*; 4.00 *et seq*. and 9.08. Based on a careful review of the evidence of record, the undersigned finds that the claimant's physical impairments do not meet or medically equal the criteria of any of the above or other listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…

(TR. 17-18). Listing 9.08, the former listing for diabetes, was repealed on June 7, 2011, after the ALJ issued his unfavorable decision. *See* 74 Fed. R. 19692-01. The new rules are applicable to claims pending on and after the effective date. *Id.* Although diabetes itself is no longer a listed impairment, severe impairments resulting from diabetes may be of listing level severity. Listing 8.04, Chronic Infections of the Skin or Mucous

Membranes, is the listing upon which Plaintiff relies in asserting error at step three. The ALJ did not consider this listing.

Skin disorders are severe when they "very seriously limit [a claimant's] use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 8.00(C)(a). Skin lesions on the soles of both feet that "very seriously limit [a claimant's] ability to ambulate" meet the criteria of the listing. *Id.* at 8.00(C)(1)(c). To meet the requirements of Listing 8.04, a claimant must prove the existence of "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed" 20 C.F.R. Pt. 404, Subpt. P App. 1, §8.04.

Plaintiff, who appeared *pro se* at the administrative hearing, testified that he had sharp pains from his foot ulcers (TR. 38). He testified that he had had ulcerated lesions on his left and right great toes for over two years, and in 2007, the ulcerated lesions on his left great toe required amputation (TR. 37-40). In September 2008, Plaintiff was hospitalized for treatment of the lesion on his right great toe and for fungal sinusitis (TR. 576-577). Although scattered medical records indicate that the lesions on Plaintiff's right great toe occasionally appeared to be improving or healing, the improvements were short-lived (TR. 620, 623; 628; 632). The record supports Plaintiff's contention that he suffered from the ulcerated lesion on his right foot almost continuously from October 10, 2007 through the date of the hearing.

The Commissioner contends that Plaintiff's condition did not meet or equal Listing 8.04 because the listing requires lesions on the soles of both feet (ECF No. 13, 6) (Response Brief). But for the fact that Plaintiff had had his left great toe amputated, however, the record supports a conclusion that Plaintiff would have continued having lesions on both great toes. Having failed to discuss the requirements of Listing 8.04, the ALJ also failed to consider whether Plaintiff's medical impairments met or were equivalent to Listing 8.04. An impairment is "medically equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The point of requiring skin lesions on the soles of both feet is that such limitations could result in "very seriously" limiting the claimant's ability to ambulate. The Commissioner points out that on June 6, 2008, Plaintiff's treating physician discussed with Plaintiff the importance of regular exercise (ECF No. 13 at 7). The Commissioner concludes that the doctor would not have made such a recommendation if Plaintiff were "very seriously" limited in his ability to ambulate. The Commissioner's reasoning does not take into account that regular exercise does not always require weight-bearing ambulation. In any case, this court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). On remand, the Commissioner should consider Listing 8.04 and determine whether Plaintiff's skin lesions meet or equal the criteria set forth in the listing.

## II. The ALJ's Consideration of Plaintiff's Obesity

Plaintiff's medical records include consistent reports of obesity. At times his body mass index (BMI) has been so high that he was in the "extreme obesity" category.

Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). At each step of the sequential evaluation, whether determining that a claimant with obesity does or does not have a listing-level impairment or combination of impairments, assessing a claimant's RFC, or determining what jobs, if any, a claimant could perform, an ALJ must consider the cumulative effects of obesity and the claimant's other impairments.

In this case, the ALJ stated that he had considered Plaintiff's obesity:

> The undersigned has also given consideration to Social Security Ruling 02-1p which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitations resulting from the obesity in the residual functional capacity assessment in addition to any limitations resulting from any other physical or mental impairment identified

(TR. 18). The ALJ's summary of the ruling includes a description of the proper way to analyze a claimant's obesity. The decision itself, however, demonstrates that the ALJ did not include a reviewable analysis of Plaintiff's obesity. The ALJ mentioned Plaintiff's

obesity only one time in the decision, when he noted that the *pro* se claimant had alleged no symptoms resulting from his obesity (TR. 19). The ALJ's comment suggests that a claimant must point to symptoms from obesity alone. But the regulations require the ALJ to consider also the combined effects of obesity and other impairments. On remand, the ALJ will have the opportunity to consider properly the combined effects of Plaintiff's obesity and his other severe impairments.

### III. The ALJ's Credibility Analysis

Plaintiff contends that the ALJ erred in his credibility assessment. As the Tenth Circuit Court of Appeals has stated repeatedly,

> "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability")

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

In *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987), the Tenth Circuit Court of Appeals set out a framework for evaluating a claimant's subjective allegations of pain or other symptoms and identified an illustrative set of factors, in addition to medical tests,

that guide the consideration of a claimant's credibility of testimony regarding pain or other symptoms. *See id.* at 163–66. The Tenth Circuit then expanded the "Luna" factors in *Huston v. Bowen*, being careful to note again that they were not "exhaustive" but "merely illustrative." *Id.* at 838 F.2d 1125, 1132 n. 7 (10th Cir. 1988). As stated in *Huston*, those factors are:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1132. Similar factors are set forth in Social Security Ruling 96–7p, and the Tenth Circuit has held that ALJs "should consider" them. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). Of course, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence"; it suffices if he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "[C]ommon sense, not technical perfection, is our guide." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In this case, the ALJ summarized Plaintiff's testimony at the 2010 hearing regarding his activities. The ALJ noted that Plaintiff testified that he did no cooking, dishes, housework, laundry, yard work or driving and did not engage in social activities. He testified that he could make his bed, shop once per week, spend time with his son, sister, niece and nephews, pay bills and attend to his own personal hygiene and grooming (TR.

19). These limited activities are insufficient to support a conclusion that Plaintiff retains the ability to work.

The ALJ relied on a perceived inconsistency between Plaintiff's hearing testimony and function reports completed the year before in which Plaintiff stated that he had no problem with personal care, did his own laundry, shopped for himself, handled his checking and savings account, goes outside, and uses public transportation. He reported his social activities included talking on the telephone (TR. 19-20).

The validity of the ALJ's credibility analysis depends on his implicit assumption that Plaintiff's impairments have not changed since the function reports were completed a year before the hearing. Even then, Plaintiff's activities were not so extensive as to demonstrate his ability to work.

The ALJ also found that Plaintiff did not consistently comply with recommended medical treatment as evidenced by his uncontrolled blood pressure and blood sugar (TR. 20). But the ALJ, himself, noted that Plaintiff does not have medical insurance (TR. 20). Even so, the ALJ contends that Plaintiff could seek "lower cost" medical treatment and had done so in the past (TR. 20). It does not necessarily follow, however, that Plaintiff's poor health is attributable solely to the recent dearth of medical care. Plaintiff has severe medical conditions, as the ALJ recognized. Medical care, even "low cost" medical care can sometimes be unaffordable. On remand, the Commissioner will necessarily be required to re-evaluate Plaintiff's credibility.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **July 5, 2013**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on June 21, 2013.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE